## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| STUART ROSENBLUM, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> v.<br><br>PRIMO BRANDS CORPORATION, DAVID HASS, C. DEAN METROPOULOS, and ROBBERT RIETBROEK,<br><br>     Defendants. | <u>CLASS ACTION</u><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Stuart Rosenblum brings this action under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, against Defendants Primo Brands Corporation ("Primo Brands" or the "Company"), David Hass, C. Dean Metropoulos, and Robbert Rietbroek, (collectively, the "Defendants"), individually and on behalf of all other similarly situated persons who purchased or otherwise acquired (i) the common stock of Primo Water Corporation between June 17, 2024 through November 8, 2024, inclusive, and/or (ii) the common stock of Primo Brands between November 11, 2024 through November 6, 2025, inclusive (collectively, the "Class Period"), and were damaged thereby (collectively, the "Class").

Plaintiff alleges the following based upon personal knowledge as to Plaintiff's own acts, and upon information and belief as to all other matters, based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, the review and analysis of: (i) transcripts, press releases, news articles, lawsuits, reports, and other public statements issued by or concerning Primo Brands; (ii) research reports issued by financial analysts concerning the Company; (iii) reports and other documents filed publicly by Primo Brands with the SEC; and (iv) other available materials relating to Primo Brands. Plaintiff's investigation into the factual allegations contained in this Complaint is continuing, and many of the relevant facts are known only by Defendants or are exclusively within their custody or control. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth in this Complaint after a reasonable opportunity for further investigation and discovery.

## I.    INTRODUCTION

1.    This federal securities class action arises from materially false and misleading statements made to investors concerning the merger of Primo Water Corporation ("Primo Water")

1

and an affiliate of BlueTriton Brands, Inc. ("BlueTriton Brands").  Following the completion of the merger, which was originally announced on June 17, 2024, the combined entity operated as Primo Brands.  Throughout the Class Period, Defendants assured investors that the merger would accelerate growth, generate transformative operational efficiencies, achieve meaningful synergies, and deliver strong financial results.  In addition, Defendants further assured investors that the integration was proceeding smoothly—"flawless" in fact.

2.      Unfortunately, none of these statements were true.  In reality, and unbeknownst to investors, the merger integration was going poorly and would severely hamper the Company's performance.  Contrary to Defendants' public statements during the Class Period, the merger integration was far more "complicated and more complex" than the Company led investors to believe, leading to significant problems, including technology and customer service issues that materially affected Primo Brands' ability to supply customers. These issues, which were known to Defendants during the Class Period, would ultimately force the Company to slash net sales guidance.  Rather than create the meaningful operational efficiencies that Defendants touted the merger would achieve, the exact opposite occurred.

3.      By the end of the Class Period, Defendants could no longer hide the serious problems with the merger integration and, on November 6, 2025, were forced to admit the full truth, causing the price of Primo Brands' stock to plummet by *36%* over a two-day trading period, wiping out *more than $2.0 billion* in shareholder value.

## II.     JURISDICTION AND VENUE

4.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. §240.10b-5.

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

6.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa(c), and 28 U.S.C. § 1391(b).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this District.  Primo Brands maintains dual headquarters in Stamford, Connecticut and Tampa, Florida, and therefore conducts substantial business in this District.  In addition, many of the acts alleged herein occurred in this District.

7.      In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mails, interstate telephone communications, and facilities of the national securities markets.

## III.    PARTIES

8.      Plaintiff Stuart Rosenblum purchased Primo Brands' common stock at artificially inflated prices during the Class Period, as set forth in the attached certification, and suffered damages as a result of the violations of the securities laws alleged in this Complaint.

9.      Defendant Primo Brands Corporation is a Delaware corporation that operates as a beverage company.  The Company is based in Tampa, Florida and its common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "PRMB".  Primo Brands was formed when Primo Water Corporation merged with an affiliate of BlueTriton Brands, Inc.

10.     Non-Defendant Eric Foss ("Foss") was appointed CEO and Chairman of the Board of Directors (the "Board") of Primo Brands effective November 6, 2025, conducted the November 6, 2025 investor conference call, and previously served as a Board member for both Primo Brands and Primo Water.

11.     Defendant David Hass ("Hass") served, at all relevant times, as the Company's Chief Financial Officer ("CFO"), and previously served as the CFO of Primo Water.

12.     Defendant C. Dean Metropoulos ("Metropoulos") served as Chairman of the Board of BlueTriton Brands from June 17, 2024 through November 8, 2024 and as Non-Executive Chairman of the Board of Primo Brands from November 11, 2024 until November 6, 2025 when he was succeeded by Foss. Metropoulos remains a Director of the Company.

13.     Defendant Robbert Rietbroek ("Rietbroek") served as CEO of Primo Water from January 1, 2024 until its merger with BlueTriton Brands on November 8, 2024.  Following the merger, Rietbroek continued as CEO of the combined Company, Primo Brands, from its formation through November 6, 2025, when he was replaced by Foss.

14.     Defendants Hass, Metropoulos, and Rietbroek are collectively referred to as the "Individual Defendants." During the Class Period, the Individual Defendants actively managed the Company, overseeing its operations as well as finances, and made the materially false and misleading statements described below. The Individual Defendants, by virtue of their positions, had extensive knowledge about the core aspects of Primo Brands' financial and business operations. They were also deeply involved in deciding which disclosures would be made by the Company to its investors. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that adverse facts had not been disclosed to the public and were being concealed, and that the positive representations being made were materially false and/or misleading at the time they were made.

## IV.    SUBSTANTIVE ALLEGATIONS

15.     Primo Brands purports to be a leading North American branded beverage company focused on healthy hydration, offering responsibly sourced products across multiple formats,

channels, and price points, and for a wide range of consumer occasions. Its products are distributed in every U.S. state and in Canada.

16.    The Class Period begins on June 17, 2024 when Primo Water and BlueTriton Brands announced that the two companies had agreed to merge in a "[t]ransformative all-stock transaction." In the press release announcing the merger, Defendants touted the synergies of the deal stating that the combined company is expected to have "significant financial and operating leverage" and "***enhanced distribution capabilities***"[1] which positioned the combined company "for sustained long-term growth."  Primo Water also announced it intended to a pay a special dividend of up to $133 million to is shareholders prior to the closing.

17.    During a conference call held that same day to discuss the merger, Rietbroek stated that "[Primo Brands] is positioned to generate meaningful cost synergies and value-creation opportunities." CFO Hass further stated:

> In IT and ERP, we plan to optimize our functional software and expand the use of successful systems implementation further into the organization.  We also plan to benefit from a recently implemented ERP by BlueTriton, which we expect to accelerate the modernization of our combined financial systems.  Within our call center, we have an opportunity to better align our activities ***to deliver superior service at a lower cost***.

18.    On November 8, 2024 the Company announced the successful completion of the merger between Primo Water and BlueTriton Brands in a press release issued after the close of the financial markets.  In that press release, Primo Brands informed investors that the Company's common stock would begin trading on the NYSE under the ticker symbol "PRMB" starting on November 11, 2024.  Defendants further highlighted the tremendous growth the newly combined entities would have going forward, stating:

> With a highly competitive portfolio of brands, a variety of formats and offerings across price points, and a vertically integrated, coast-to-coast manufacturing and distribution network

_____

[1] Unless otherwise noted, all emphasis is added.

across North America, we believe **Primo Brands is strategically positioned to accelerate growth, deliver superior products and services for our customers and consumers, and be a best-in-class U.S. beverage company.**

Primo Brands has an iconic brand portfolio, including billion-dollar, widely recognized brands such as Poland Spring® and Pure Life®, high-growth premium brands like Saratoga® and Mountain Valley®, and other valuable brands with significant growth potential, continued Mr. Rietbroek. **Our goal is to drive sustainable, long-term shareholder value creation as we capture transformative operational efficiencies, achieve our synergy goals and deliver strong financial results.** I want to thank our talented teams for their dedication and hard work in building our strong momentum.

I believe Primo Brands is positioned to be a leader in the healthy hydration beverage category, thanks to the strength of its iconic, sustainably-sourced brands, its robust operations and extensive North American network, and its responsible operation of numerous springs across the country, said Dean Metropoulos, Non-Executive Chairman of the Board of Directors of Primo Brands.

**We have a clear strategy to accelerate growth driven by the strong demand for branded beverages and healthy hydration that continues to expand across all high-growth channels, including retail, clubs, restaurants, hospitality, convenience stores, hospitals, schools, offices and more.** Importantly, we also continue to strengthen Primo Brands' commitment to sustainability, including through our increasingly environmentally friendly delivery fleet, circular packaging efforts and water stewardship.

Primo Brands has an exciting future with premium, trusted brands that have a rich American heritage, six of which are more than 100 years old and four that date back to the 1800s, diverse assets and operations, a strong commitment to protecting our environment and communities, and highly engaged associates focused on execution, continued Mr. Metropoulos. Driving Primo and its differentiated advantages is a highly entrepreneurial and motivated executive team and Board of Directors that foster a positive and rewarding work environment for all of the Company's associates and **operate with a highly efficient performance culture. We believe the continued and consistent, multi-year growth across the combined company's portfolio, together with attractive margins, will continue to drive Primo Brands' value into the future.**

19.     Throughout the Class Period, Defendants continued to speak positively about the merger in general, and specifically about the merger integration process.  For example, during the Company's fourth quarter 2024 earnings call on February 20, 2025, then CEO Rietbroek stated "all aspects of our business are aligning for *flawless* integration execution, where we build a foundation for long-term growth by unifying the people, processes, policies, and platforms to maximize timely cost synergy capture, as well as to capture revenue synergies."

6

20.     On May 8, 2025, during the Company's first quarter 2025 earnings call, Rietbroek again reiterated that "all aspects of our business are aligning for *flawless* integration execution," and added that the successful execution and delivery of these key initiatives will position the Company "to achieve our 2025 financial guidance, which includes capturing $200 million in cost synergies opportunity as we ramp up through the balance of the year."

21.     Then, on August 7, 2025, investors first started to learn the truth—but only in small part—when the Company announced its second quarter 2025 financial results, and Rietbroek admitted on the corresponding earnings call that "[t]he speed by which we closed facilities and reduced headcount led to disruptions in product supply, delivery, and service." However, Rietbroek quickly downplayed these issues stating "we are now on the right trajectory as we enter the second half of the year" and that "[w]e will continue to execute against our strategy and must-win priorities while resolving our service issues."

22.     In reaction to these disclosures, Primo Brands' stock price dropped $2.41 per share, or 9%, from $26.41 per share on August 6, 2025 to $24.00 per share on August 7, 2025, wiping out hundreds of millions in the Company's market value.

23.     The statements in ¶¶16–21 were materially false and misleading when made. In truth, the merger integration between Primo Water and BlueTriton Brands was tracking poorly due to, among other things, technology and service issues. Moreover—and contrary to Defendants' statements assuring investors that the execution was "flawless"—the Company was having major supply disruptions which would negatively impact customers and thus the Company's financial results.

## V.     THE FULL TRUTH IS REVEALED

24.     On November 6, 2025, prior to the open of the financial markets, Primo Brands stunned investors when it revealed that Rietbroek was being replaced as CEO and that the Company was slashing its full year 2025 net sales and adjusted EBITDA guidance.[2]  During the corresponding conference call, newly appointed CEO Foss admitted that the Company "probably moved too far too fast on some of the various integration work streams" and that "[t]here's no doubt that speed impacted our ability to get through a lot of the warehouse closures and route realignment without disruption."  Foss further revealed "customer services issues" as well as "integration issues related to the technology move over."  Regarding ongoing customer service issues, Foss stated "there is more work to do on this front to completely get the issue solved and corrected."

25.     As a result of its disastrous merger integration process, Primo Brands was forced to reduce its 2025 forecast to a low single digit decline, after previously cutting its outlook from expected growth of +3-5% to roughly flat or up just 1%.

26.     Analysts were shocked by Primo Brands' disclosures.  For example, JPMorgan analysts reported that: "The 3Q25 print was another in a series of disappointments since the merger between Primo Water and BlueTriton with another significant guidance cut and now CEO change," stating that the severe stock price reaction reflects the "confounding 4Q25 guide, potential implications for 2026 top-line/earnings power, and overall lack of investor confidence in the company."  Similarly, Barclays analysts stated "the outsized stock reaction…tells us this seemingly has more to do with credibility than anything else," and that "trends will get worse before they get better."

---

[2] Primo Brands COO Robert Austin had taken a leave of absence on September 12, 2025 with Reitbroek stepping in as interim COO.

27.    On this news, the price of the Company's common stock declined $8.20 per share, or more than 36%, from a close of $22.66 per share on November 5, 2025, to close at $14.46 per share on November 7, 2025, wiping out $2.0 billion in market capitalization in two trading days.

28.    From the Company's Class Period stock price closing high of $35.63 per share on April 3, 2025, Primo Brands' stock price dropped an astonishing $21.17 per share, or nearly 60%, erasing billions of dollars from the Company's market capitalization.

## VI.  SCIENTER

29.    Defendants acted with scienter in that they knew, or recklessly disregarded, that the public documents and statements they issued or disseminated to the investing public during the Class Period were materially false or misleading. Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements and documents as well as actions intended to manipulate the market price of Primo Water's and Primo Brands' common stock, as primary violations of the federal securities laws.  Defendants, by virtue of their receipt of information reflecting the true facts regarding Primo Brands, their control over, receipt, and/or modification of Primo Brands' materially false and misleading statements, were active and culpable participants in the fraudulent scheme alleged herein.

30.    Defendants knew or recklessly disregarded the false and misleading nature of the information they caused to be disseminated to the investing public. The fraudulent scheme described herein could not have been perpetuated during the Class Period without the knowledge and complicity of, or at least the reckless disregard by, personnel at the highest levels of the Company, including the Individual Defendants. Given their positions with Primo Brands, the Individual Defendants controlled the contents of Primo Brands' public statements during the Class Period. The Individual Defendants were each provided with, or had access to, the statements alleged

herein to be false and misleading prior to, or shortly after their issuance, and had the ability as well as the opportunity to prevent their issuance or cause them to be corrected.

31.    Because of their positions and access to material non-public information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations that were being made were false and misleading. As a result, each of the Defendants is responsible for the accuracy of Primo Brands' corporate statements, and is, therefore, responsible and liable for the representations contained therein.

## VII.    LOSS CAUSATION/ECONOMIC LOSS

32.    Plaintiff and other class members were damaged as a result of Defendants' fraudulent conduct as alleged herein.  During the Class Period, Defendants engaged in a scheme to deceive investors by issuing a series of material misrepresentations, and omitting material facts and uncertainties required to be disclosed, relating to Primo Brands' operations, business, financial performance, and future prospects.

33.    As a direct result of Defendants' scheme, misrepresentations of material fact, and omissions of material fact, the price of Primo Water's and Primo Brands' common stock was artificially inflated throughout the Class Period.

34.    Class members unknowingly and in reliance on Defendants' materially false or misleading statements and/or omissions purchased Primo Water's and/or Primo Brands' common stock at artificially inflated prices on the NYSE. But for Defendants' misrepresentations, omissions, and fraudulent scheme, Plaintiff and other class members would not have purchased Primo Water's and/or Primo Brands' common stock at the artificially inflated prices at which it traded during the Class Period.

35.     The truth regarding Defendants' fraud was revealed through corrective disclosures on August 7, 2025 and November 6, 2025.  In response to these corrective disclosures, the price of Primo Brands' stock fell precipitously as the artificial inflation caused by Defendants' unlawful conduct was removed from Primo Brands' stock price.

36.     This decline in Primo Brands' stock price following the corrective disclosures is directly attributable to the market absorbing information that disclosed the falsities in or misleadingly omitted from Defendants' material misrepresentations and omissions.

37.     Plaintiff and other class members suffered economic losses as the price of Primo Brands' stock fell in response to the corrective disclosures.  It was foreseeable that such disclosures would cause Primo Brands' stock price to decline.  Thus, Defendants' wrongful conduct, as alleged herein, directly and proximately caused the damages suffered by Plaintiff and other class members.

## VIII.    PLAINTIFF IS ENTITLED TO A PRESUMPTION OF RELIANCE

38.     At all relevant times, the market for shares of Primo Water's and Primo Brands' common stock was an efficient market by virtue of the following reasons, among others: (i) shares of Primo Water's and Primo Brands' common stock met the requirements for listing, were actually listed, and actively traded on the NYSE; (ii) according to Primo Brands' Form 10-Q for the fiscal quarter ended September 30, 2025, Primo Brands had 370,616,043 outstanding shares of class A common stock, demonstrating a broad market for Primo Brands' common stock; (iii) according to Primo Water's Form 10-Q for the fiscal quarter ended September 28, 2024, Primo Water had 160,395,822 outstanding shares of common stock, demonstrating a broad market for Primo Water's common stock; (iv) as registered and regulated issuers of securities, Primo Water and Primo Brands filed periodic reports with the SEC and NYSE, in addition to their frequent voluntary dissemination of information; (v) Primo Water and Primo Brands regularly communicated with investors via

established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services, the internet, and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services; (vi) Primo Water and Primo Brands were followed by securities analysts employed by major brokerage firms, who wrote reports that were distributed to the customers of their respective brokerage firms and made such reports publicly available; (vii) the material misrepresentations and omissions alleged herein would tend to induce a reasonable investor to misjudge the value of Primo Water's and Primo Brands' common stock; and (viii) without knowledge of the misrepresented or omitted facts, Plaintiff and the members of the class purchased or otherwise acquired Primo Water's and Primo Brands' common stock between the time Defendants made the material misrepresentations and omissions and the time the truth was revealed, during which period the price of Primo Water's and Primo Brands' common stock was artificially inflated as a result thereof.

39.    The market for Primo Water's and Primo Brands' common stock promptly digested current information regarding both companies from all publicly available sources and reflected such information in the price of each company's respective common stock.  Under these circumstances, all purchasers of Primo Water's and Primo Brands' common stock during the Class Period who relied upon the integrity of the market price of each company's respective common stock, including Plaintiff, suffered similar injury through their purchase of Primo Water's and Primo Brands' common stock at artificially inflated prices, and a presumption of reliance under the fraud-on-the-market doctrine applies.

## IX.   THE STATUTORY SAFE HARBOR AND BESPEAKS CAUTION DOCTRINE ARE INAPPLICABLE

40.    The Private Securities Litigation Reform Act's statutory safe harbor and the bespeaks caution doctrine applicable to forward-looking statements under certain circumstances do not apply to any of the materially false or misleading statements alleged herein.

41.    None of the statements complained of herein were forward-looking statements. Rather, each was a historical statement or statement of purportedly current facts and conditions at the time each statement was made.

42.    To the extent that any materially false or misleading statement alleged herein, or any portion thereof, can be construed as forward-looking, such statement was not accompanied by meaningful cautionary language identifying important facts that could cause actual results to differ materially from those in the statement or portion thereof.  As set forth above, given the then-existing facts contradicting Defendants' statements, any generalized risk disclosures made by Defendants do not insulate Defendants from liability for their materially false or misleading statements or omissions.

43.    To the extent that the statutory safe harbor applies to any materially false or misleading statement alleged herein, or any portion thereof, Defendants are liable for any such materially false or misleading forward-looking statement because at the time such statement was made the speaker knew the statement was materially false or misleading, or the statement was authorized and approved by an executive officer of Primo Brands who knew that the forward-looking statement was materially false or misleading.

## X.   CLASS ACTION ALLEGATIONS

44.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), individually and on behalf of a Class consisting of all persons and

entities that purchased or otherwise acquired (i) the publicly traded common stock of Primo Water between June 17, 2024 through November 8, 2024, inclusive, and (ii) the publicly traded common stock of Primo Brands between November 11, 2024 through November 6, 2025, inclusive.

45.    Excluded from the Class are: (i) Defendants; (ii) present or former executive officers of Primo Water, Primo Brands, members of Primo Brands' Board, and members of their immediate families (as defined in 17 C.F.R. § 229.404, Instructions (1)(a)(iii) and (1)(b)(ii)); (iii) any of the foregoing persons' legal representatives, heirs, successors, or assigns; (iv) any entity in which Defendants have or had a controlling interest; and (v) any affiliate of Primo Water or Primo Brands.

46.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Primo Water's and Primo Brands' securities were actively traded on the NYSE. While the exact number of class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery from Defendants, Plaintiff believes that there are at least hundreds, if not thousands, of members in the proposed Class.  Class members may be identified from records maintained by Primo Water and Primo Brands or its transfer agent(s) and may be notified of the pendency of this action by mail using a form of notice customarily used in securities class actions.

47.    Plaintiff's claims are typical of all other class members' claims, as all class members are similarly affected by Defendants' wrongful conduct in violation of the federal securities laws complained of herein.

48.    Plaintiff will fairly and adequately protect the interests of the class members and has retained counsel competent and experienced in class and securities litigation.

49.    Common questions of law and fact exist as to all class members and predominate over any questions solely affecting individual class members. Among the questions of law and fact

common to the class are: (i) whether Defendants' acts and omissions as alleged herein violated the federal securities laws; (ii) whether Defendants' statements to the investing public during the Class Period misrepresented or omitted material facts about Primo Brands' operations, business, performance, and future prospects; (iii) to what extent the class members have sustained damages; and (iv) the proper measure of such damages.

50.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all class members is impracticable.  Furthermore, as the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impossible for class members to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## XI.    CAUSES OF ACTION

### COUNT I

### Violation of Section 10(b) of the Exchange Act
### Against All Defendants

51.    Plaintiff incorporates by reference and realleges all preceding paragraphs as if fully set forth herein.  This claim is brought against Defendants pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

52.    During the Class Period, Defendants used the means and instrumentalities of interstate commerce, the United States mails, and the facilities of a national securities exchange to make materially false or misleading statements and omissions of material fact alleged herein to: (i) deceive the investing public, including Plaintiff; (ii) cause the market price of Primo Water's and Primo Brands' common stock to trade above its true value; and (iii) cause Plaintiff as well as other class members to purchase or otherwise acquire Primo Water's and/or Primo Brands' common stock at artificially inflated prices that did not reflect each stock's true value during the Class Period.

In furtherance of their unlawful scheme, plan, or course of conduct, Defendants took the actions alleged herein.

53.    While in possession of material adverse non-public information, Defendants, individually and in concert, directly or indirectly, by the use of means and instrumentalities of interstate commerce, the United States mails, and the facilities of a national securities exchange: (i) employed devices, schemes, and artifices to defraud; (ii) made false or misleading statements of material fact and/or failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon the purchasers of the Primo Water's and Primo Brands' common stock in an effort to maintain artificially high market prices for Primo Water's and Primo Brands' common stock, in violation of Section 10(b) and Rule 10b-5.  Defendants are alleged as primary participants in the wrongful conduct alleged herein.

54.    Defendants acted with knowledge or a reckless disregard for the truth of the materially misrepresented and omitted facts alleged herein in that they failed to disclose such facts even though such facts were readily available to them, if not known.  Defendants' material misrepresentations and omissions were made knowingly and/or recklessly for the purpose and effect of concealing the truth regarding Primo Brands' operations, business, performance, and future prospects generally from the investing public and supporting the artificially inflated price of its, and Primo Water's, common stock.

55.    As set forth above, the dissemination of the materially false or misleading information and failure to disclose material facts artificially inflated or maintained artificial inflation already incorporated in the market price of Primo Water's and Primo Brands' common stock during the Class Period. Plaintiff and other class members purchased or otherwise acquired

Primo Water's and/or Primo Brands' common stock during the Class Period at artificially inflated prices in direct or indirect reliance on: (i) the materially false or misleading statements made by Defendants; (ii) the efficiency and integrity of the market in which Primo Water's and Primo Brands' common stock trades; and (iii) the absence of material adverse information that Defendants knew of or recklessly disregarded but did not publicly disclose.  As the previously misrepresented and/or concealed material facts eventually emerged, the price of Primo Water's and Primo Brands' common stock substantially declined, causing losses to Plaintiff and other class members.

56.     At the time of the material misrepresentations and omissions alleged herein, Plaintiff and other class members were not aware of their falsity and believed them to be true.  Had Plaintiff and other class members known the relevant truth regarding Primo Brands' financial results, operations, business, and prospects, which was misrepresented and/or concealed by Defendants, Plaintiff and other class members would not have purchased or otherwise acquired Primo Water's and/or Primo Brands' common stock at artificially inflated prices.

57.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other class members suffered damages in connection with their transactions in the Company's common stock during the Class Period.

## COUNT II

**Violation of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

58.     Plaintiff incorporates by reference and realleges all preceding paragraphs as if fully set forth herein. This claim is brought against the Individual Defendants pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

59.    Prior to and during the Class Period, the Individual Defendants, by virtue of their high-level positions, were privy to, and monitored, confidential and proprietary information concerning Primo Brands, its business, operations, performance, and future prospects, including its compliance with applicable federal, state, and local laws and regulations.

60.    In their respective roles, the Individual Defendants had regular access to non-public information about Primo Brands' business, operations, performance, and future prospects through access to internal corporate documents and information, conversations, and connections with other of Primo Brands' corporate officers and employees, attendance at management meetings and meetings of the Company's Board of Directors and committees thereof, as well as reports and other information provided to them in connection therewith.

61.    Each of the Individual Defendants was a controlling person of Primo Brands within the meaning of Section 20(a), as alleged herein. By virtue of their high-level positions, their participation in or awareness of the Company's day-to-day operations and finances, and/or knowledge of the statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants each had the power and authority to influence and control, and did influence and control, directly or indirectly, the day-to-day decision-making of the Company, including the content and dissemination of the statements Plaintiff alleges were materially false and misleading.

62.    Each of the Individual Defendants is liable as a primary participant in a wrongful scheme and course of business that operated as a fraud and deceit on purchasers of Primo Water's and Primo Brands' common stock during the Class Period, which included the dissemination of materially false or misleading financial statements and statements (both affirmative statements and statements rendered misleading because of material omissions) set forth above. The scheme: (i)

deceived the investing public regarding Primo Brands' operations and the true value of Primo Water's and Primo Brands' common stock; and (ii) caused Plaintiff and other class members to purchase Primo Water's and Primo Brands' common stock at artificially inflated prices, which plummeted in value when the truth concerning Primo Brands' business, operations, performance, and future prospects was revealed.

63.     The Individual Defendants were provided with, or had unlimited access to, copies of the Company's reports, press releases, public filings, and other statements Plaintiff alleges were materially misleading prior to and/or shortly after these statements were issued and had the ability and ultimate authority to prevent the issuance of these statements or cause these statements to be corrected.  In particular, the Individual Defendants maintained direct and supervisory involvement in the day-to-day operations of the Company and therefore had, or are presumed to have had, the power to control or influence the particular public statements or omissions giving rise to the securities violations as alleged herein and exercised the same.

64.     As set forth above, Defendants violated Sections 10(b) and Rule 10b-5 by their acts and omissions as alleged herein.  By virtue of the Individual Defendants' status as controlling persons and their respective participation in the underlying violations of Section 10(b) and Rule 10b-5, the Individual Defendants are liable under Section 20(a).  As a direct and proximate result of the Individual Defendants' culpable conduct, Plaintiff and other class members suffered damages in connection with their transactions in Primo Water's and Primo Brands' common stock during the Class Period.

## XII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

   a.  Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

   b.  Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

   c.  Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

   d.  Awarding such equitable, injunctive or other further relief as the Court may deem just and proper.

## XIII.   JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: November 12, 2025

Respectfully submitted,

*/s/ Nathan C. Zezula*
Nathan C. Zezula
**MOTT ZEZULA LLC**
750 East Main Street, Suite 620
Stamford, CT 06902
P: (203) 408-6500
F: (203) 724-4179
nzezula@lmzlegal.com

*Local Counsel for Plaintiff*

Karin E. Fisch (admission forthcoming)
Vincent J. Pontrello (admission forthcoming)
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue
New York, NY 10017

20

Telephone: (646) 722-8500
Facsimile: (610) 722-8500
kfisch@gelaw.com
vpontrello@gelaw.com

*Counsel for Plaintiff*